[Civ. No. 1199. Fourth Appellate District.—November 4, 1935.]

AUGUST BEISIGL et al., Petitioners, v. INDUSTRIAL AC-
CIDENT COMMISSION, ARTHUR MERRILL et al.,
Respondents.

Wright, Monroe, Thomas & Glenn for Petitioners.

Everett A. Corten for Respondents.

BARNARD, P. J.—The petitioners seek to annul an award made by the respondent Commission in favor of the other respondents on account of the death of Leslie Merrill, who was killed on February 21, 1934, while blasting out a tree basin on a small farm owned and operated by the petitioners.

The main question here presented is whether the petitioners were under and affected by the Workmen's Compensation Act by reason of the act of 1927 relating to the acceptance of the provisions of the act in connection with farm work (Stats. 1927, p. 1681), and the 1931 amendatory act (Stats. 1931,

p. 1962). While it is conceded that no notice of rejection of the provisions of said act was given it is earnestly maintained that the petitioners did not have a payroll exceeding $500 during the preceding calendar year, within the meaning of these acts.

It is assumed by both parties that the amount of the payroll in question is that for the calendar year 1933. It is admitted that during that year the petitioners paid out in excess of $1,000 for labor and that $350 of this amount may properly be classed as "payroll", but it is argued that the remainder was expended on permanent improvements and that this cannot be considered as part of the payroll within the meaning of the act. The petitioners were operating and improving a small ranch set out to avocados, and Mr. Beisigl was in poor health and could do little work. He employed one man for half time by the month and, in addition, during the year 1933 and the early part of the year 1934, he employed Leslie Merrill and his father and brothers at intervals. During the latter part of the year 1933 Leslie Merrill was employed in installing a pipe-line system for the purpose of irrigating the avocado trees. As petitioners state, "The case actually hinged upon the question of whether moneys spent for labor performed in the installation of permanent improvements upon the orchard property constituted payroll. In the instant case the permanent improvements consisted of the installation of a pipe-line or irrigating system. This pipe-line is composed of a line of pipes joined together and running through the orchard, buried beneath the surface and with stands or risers at each tree with faucets attached, so that the various trees can be irrigated by turning on the faucets. The installation is permanent in character." The question before us is whether the money spent for labor on such an improvement, to be used in operating an avocado ranch, is to be considered a part of the payroll under the terms of this act. If it is to be so considered, the finding of the Commission that the petitioners' payroll exceeded $500 for the year 1933 is fully supported by the evidence.

The petitioners argue that the word "payroll", as used in this act, implies and must be taken as meaning that any employee whose name appears thereon must be regularly employed in the sense that his time must have been definitely contracted for, and further that the work done by him must

not be casual or unusual in the sense of being in the nature of repairs or the installation of improvements. In other words, the contention is that anything paid for labor in the making of permanent improvements may not be considered in determining whether the payroll amounted to $500 and that it was the intention of the legislature to limit the payroll, thus to be used as a criterion, to wages paid to employees who are regularly employed in carrying on those regular farming operations which must be repeated year after year.

It seems apparent that this use of the word "payroll" was not intended to apply only to men regularly employed, that is, whose time was definitely contracted for for any particular time. In ordinary farming operations there are many seasonal workers such as fruit pickers, harvesters and the like, who are never regularly employed on a particular farm in the way such regular employment may well be reflected on the payroll of certain other industries. A farmer may pay large amounts for labor in the harvesting or planting season to men who cannot be said to be regularly employed in the sense contended for by the appellants. Not only may the period of such seasonal work be short but the particular men employed may frequently change during the season. Notwithstanding such facts, the amount paid for such labor is expended in the ordinary and usual course of farming operations and must have been intended by the legislature to be considered as a part of the payroll of such a farmer. Nor do we think it was intended by the act to exclude from consideration sums paid for labor in the ordinary and usual course of farming operations simply because the result accomplished by the labor is or may be more or less permanent in character. Many farm operations as, for instance, leveling ground, laying out ditches, and planting trees or vines, although a regular and usual part of carrying on the work of a farm, are a more or less permanent benefit and improvement. In many instances it is not possible to separate the future benefit of the work done from its use and value during the year in which it is done. An irrigation ditch or a leveling job may be useful from both angles. Even the trimming of trees and vines necessary for the crop of a particular year may have a beneficial effect which extends some years in the future. The petitioners seem to argue that permanent improvements of any nature are not to be considered because

they are casual and not to be repeated each year. The Workmen's Compensation Act has never excluded an employment because the same was casual but only when it was both casual and "not in the course of the trade, business, profession or occupation of his employer". (Sec. 8 (a) of the act.) Section 8 (c) of the act provides that the phrase just referred to "shall be taken to include all services tending toward the preservation, maintenance or operation of the business, business premises or business property of the employer". In *Globe I. Co.* v. *Industrial Acc. Com.*, 45 Cal. App. 328 [187 Pac. 452], it was held that carpenter work in building a silo to be used in a dairy conducted by the employers was work done in the course of the business of the employers. There is nothing in the act to exclude from its provision any service which may be of more or less permanent benefit to the business being carried on, and the general purpose of the act, where it applies, may be said to cover anything done in connection with the business for its benefit and in furtherance thereof, with no distinction between work done which may have a permanent effect as an improvement and work which is obviously a temporary operation and which must be constantly repeated. In determining whether a particular farming operation comes within the provisions of the act, we think the word "payroll" must be similarly interpreted and that it was not intended thereby to distinguish between labor employed in raising crops during a particular year and other labor which is not only usual and customary in that line of work but also of future benefit to the business.

In our opinion, the amount expended for labor in installing the irrigation system here in question was a part of the payroll within the meaning of the act and, this being true, the finding attacked is sustained by the evidence.

▮ It is next urged that the evidence is not sufficient to sustain the Commission's finding that the fatal injuries were received by the deceased while he was acting in the course of his employment. It is argued that he was hired on that occasion for the particular purpose of planting corn and that he engaged in blasting operations as a mere volunteer and without the knowledge or consent of his employer.

It appears from the evidence that during the fall of 1933, the deceased worked for a large portion of his time upon the Beisigl place, being mainly employed in the installation of an

irrigating system. At times, however, he did other work on the place when there was such work to be done. In the early part of 1934 the installation of the irrigating system was practically completed and the deceased continued to do miscellaneous work from time to time around the place. Mrs. Beisigl testified that on the morning of February 21st, Leslie came and asked for work; that Mr. Beisigl told him to go with John Kom to move some rocks; that a little later her husband called to John and told him to stop work because it was raining; that Leslie came in and told them they had some dynamite but no fuse; that the men, including Leslie, always used dynamite for blasting when digging ditches for the pipeline, in planting trees and for other work; that Leslie always looked after things; that after dinner Leslie and John came back and John came in and asked what they should do; that she asked her husband and reported to them that they were to get some ground ready to plant corn and Mr. Beisigl would be down soon; that Leslie had brought some fuse from his home; that there were some basins where fig trees had died the year before; that Leslie was a good boy and could see work that was needed; that if he was around the place and saw something that needed to be done he would go ahead and do it; that he would then bring in his bill at thirty cents an hour and they would pay it; that they left it to Leslie to find his job on the place; that her husband needed him as he had so many ''attacks'' and ''he left it to Les. Yes, Leslie was a good boy''; and that Leslie must have thought he would get the basins where the fig trees had died ready for some trees. Mr. Beisigl testified that he was lying down when his wife asked him what the boys should do; that later he heard a blast and went to the orchard; that Leslie told him he had put in a blast and he saw that he had planted a lime tree in one of the basins; that he told Leslie the tree was planted too low and told him to raise it; that Leslie raised it a few inches and then walked away with his shovel and pick; that he did not know exactly where he was going; that he went back to where the others were planting corn and soon Leslie came over to them and waited until another blast went off; that he then knew that Leslie had set this blast; and that Leslie had previously blasted when it was needed in digging ditches and setting trees. It was brought out that at another time, in giving his deposition, Mr. Beisigl had stated that

after Leslie raised the tree as directed he "went to another place and started to drilling holes where the fig tree had died". It appears that Leslie had placed two blasts in the tree hole and that he went over to where Mr. Beisigl and the others were planting corn, which was only a few feet away, and waited for the explosion. One blast went off and when he went back to see about the other it went off and killed him.

In view of the previous custom of the parties and the knowledge possessed by Mr. Beisigl at the time, as to what Leslie was doing, we think the evidence is sufficient to sustain the finding that he was then acting in the course of his employment.

█ The last point raised is that it has, in effect, been found in an action in the superior court that the deceased was not acting in the course of his employment at the time he was killed, that this is an adjudicated fact which is controlling in this proceeding and that the Commission was without power to make a finding to the contrary. An action was begun by the individual respondents in the Superior Court of San Diego County as permitted by section 29 (b) of the Workmen's Compensation Act where an employer has failed to secure the payment of compensation in one of the ways provided in section 29 (a) of that act. That action was based upon the alleged negligence of the defendants, the petitioners here, in assigning a dangerous task of blasting to an inexperienced youth without warning him as to the dangerous nature of the work. A judgment was entered for the defendants which has become final. It is here argued that in order to determine the question of negligence thus raised it became necessary for the court to determine whether the act of blasting constituted any part of the duty for which the deceased was employed, that in determining that question the court found that in doing the blasting the deceased was acting as a volunteer, that it necessarily follows that the court found that while using the dynamite the deceased was not acting in the course of his employment, and that this finding is controlling upon the Commission.

The findings of the court in the action referred to were introduced in evidence in this proceeding and are now before us. The court found: "That on said 21st day of February, 1934, the said Leslie Merrill, while with the knowledge of the defendant engaged in the course of his employment by de-

fendant, August Beisigl, in doing miscellaneous work upon said tract of land, undertook to prepare certain holes on said property for the planting of trees, and in doing so, planted certain charges of dynamite for the purpose of blasting material from said holes, which dynamite said Leslie Merrill caused to be exploded by the use of caps which were fired by the burning of fuses, which in turn were ignited by means of a match or small flame. That the death of said Leslie Merrill was not occasioned or contributed to by any negligent act or omission of the defendants or either of them, nor were defendants or either of them negligent as alleged in the complaint, or at all; that it is not true that defendants or either of them gave to said Leslie Merrill any task of blasting; that blasting was no part of the duty of the said Leslie Merrill, but merely a means of excavating adopted by him on his own initiative, and that no failure of defendants to instruct said Leslie Merrill how to blast amounted to negligence; that said Leslie Merrill was mature for his years and fully capable of doing a man's work, both mentally and physically, and was not inexperienced in blasting; that having reason to believe Leslie Merrill to be in all respects capable of doing a man's work and not to be inexperienced in blasting, defendants were not negligent in failing sufficiently or otherwise to warn him of the dangerous nature of his work; . . . ''

It thus appears that the court did not find that the deceased was not acting in the course of his employment at the time he was killed but, on the other hand, it was expressly found that he used the dynamite while engaged in the course of his employment by the defendant. While the court also found that the defendants had not instructed the deceased to do the blasting and that such blasting was merely a means of excavating adopted by him, these facts were found as a part of and because of their bearing on the question of defendant's negligence in failing to instruct the deceased with respect to the manner of using dynamite. While these facts had an important bearing in that action they were not important in the proceeding before the Commission, where negligence on the part of the petitioners was not involved. No conflicting adjudication appears on the essential question as to whether the deceased was engaged in the course of his employment at the time he was injured. Whether the method

of doing the work was adopted on his own initiative or under instructions from his employer is not controlling here.

The larger question, suggested by counsel, as to whether an express finding, in such an action at law, that the injuries were not received in the course of the employment, must be accepted by the Commission as an adjudicated fact, is not involved here and we express no opinion thereon.

For the reasons given the award is affirmed.

Marks, J., and Jennings, J., concurred.